IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LUKE WATKINS (TDCJ #1637637), | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-1522 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND OPINION

The petitioner, Luke Watkins, an inmate at the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"), seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging his state-court assault conviction. The respondent, William Stephens, has filed a motion for summary judgment, with a copy of the state court record,[1] and Watkins has filed a response. (Docket Entry Nos 10, 13,14).

Based on the pleadings, the state-court record, and the applicable law, the court grants the respondent's motion, denies the writ, and dismisses this case by separate order. The reasons are set out below.

## I.    Background

Watkins was indicted in Cause No. 09-05-05209-CR for assault causing bodily injury to Chandra Harvey, who was described as "a member of [Watkins's] family."[2]  Watkins was charged

---

[1] The record contains two copies of the state court record.  (Docket Entry Nos. 9, 10).  For the sake of consistency, the court refers only to the state court record found at Docket Entry No. 10.

[2] Indictment, Docket Entry No. 10-11, at p. 8.

as a habitual offender based on a prior conviction for assaulting a family member.[3]  The indictment included allegations that his sentence was subject to enhancement based on three additional prior felony convictions for delivery of a controlled substance, arson, and driving while intoxicated.[4]  The jury found Watkins guilty on the assault charge and found that the enhancement allegations were true.  Watkins received a 60-year prison sentence.[5]

On direct appeal, Watkins argued that the trial court erred by admitting evidence of his prior assaults on the same victim and that the evidence was insufficient to support the guilty verdict.  The intermediate court of appeals rejected Watkins's claims and affirmed the conviction.  The court summarized the facts presented at trial, as follows:

> C.H., the complainant, has known Watkins since 2004. At the time of the assault they were common-law married, they introduced themselves as husband and wife, and others knew them as "Mr. and Mrs. Hammer." They were homeless. They had no children together.
>
> C.H. contacted the district attorney's office and stated she did not want to participate in the trial. The district attorney's office subpoenaed C.H. She refused to attend the trial. Pursuant to a writ of attachment, law enforcement brought C.H. to the trial against her will. On the witness stand, C.H. cried and testified that she loves Watkins and "didn't want to go against him on this."
>
> She acknowledged calling 9–1–1 in April 2009 from outside a Kroger store in Willis. She does not remember what she told the dispatcher because she was upset and "had been under the influence." She and Watkins had been arguing all day. She had become upset with him for eating all the chicken she had purchased. She grabbed his shirt and was "swinging at him[.]"
>
> The assault occurred later that evening when she asked Watkins for twenty-five cents for a drink. She was "coming off of a binge." She remembered

---

[3] *Id.*

[4] *Id.* at pp. 8-9.

[5] *Id.*

2

speaking with someone at the Kroger store, and being treated by EMS. She acknowledged reporting that Watkins had kicked her and hit her several times, and so it "probably" happened, although she didn't "remember it actually happened that way." C.H. testified that she did not file charges against Watkins. After confronting Watkins at the Kroger store she told him she loved him.

During the assault, C.H. suffered an injury to her nose. The injury to her nose hurt more the day after the assault, and took two weeks to heal. At trial, she initially refused to look at the photographs of her injuries. She explained that she still wants to be with Watkins, that she knows she's "better off" without him, that he liked "to tell [her] how to act," and that "he do [esn]'t love [her] like [she] love[s] him."

The jury heard the recording of the 9–1–1 call. C.H. reported that her husband was Luke Watkins and he "beat [her]." She reported an injury to her head but stated she did not need an ambulance. She provided the dispatcher with an address, and stated that Watkins could be found inside a brown car at the residence.

Officer Brian Skero, a patrolman with the Willis Police Department, testified that he arrived quickly at the Kroger store. C.H. approached Skero's patrol car before he got out of the car. Skero testified it was obvious she had a "busted nose[.]" Blood was smeared across her face and hands. Concerned about the amount of blood, Skero told the dispatcher to notify Montgomery County EMS. Skero described C.H. as "emotionally distraught." She told him she was "assaulted" by Luke Watkins after she asked Watkins for twenty-five cents for a drink. Watkins had kicked her and punched her in the face. Skero, who had worked as a paramedic prior to becoming a patrolman, testified that C.H.'s injuries were consistent with her description of the assault. In addition to the injury to her face, C.H. had red marks and lacerations on her neck and chest consistent with a recent assault. C.H. told him that Watkins had kicked and punched her throughout her body. Skero did not smell alcohol on C.H.'s breath or notice any signs of intoxication.

C.H. provided Skero with an address where the assault had occurred, and she told Skero that Watkins could be found hiding in an abandoned car. Skero gave C.H. a statement form to fill out, and left her with Officer Tammy Towery, a deputy with the Montgomery County Sheriff's Department, who was working security at the store. Officer Towery testified she waited for EMS with C.H. while an officer went to locate the defendant. C.H. told her that her boyfriend had punched her in the face when she asked for twenty-five cents for a drink. Towery did not believe C.H. was intoxicated.

Skero drove to the address, which was about five blocks from the Kroger store. He found Watkins inside a vehicle parked outside a residence. Skero believed Watkins's mother owned the residence.

Watkins was in the driver's seat with his eyes closed, apparently sleeping. Skero knocked on the car window several times in a way that "would have woke anybody up." Watkins did not acknowledge him. Skero believed Watkins was pretending to sleep, because Watkins finally "woke up" but did not appear groggy or disoriented. Skero ordered him to unlock the door. Skero took Watkins back to the store for identification.

C.H. refused to go to the hospital but received treatment from EMS. Pictures were taken of C.H. after EMS had treated her. When Skero arrived back at the store with Watkins, C.H. was still "hysterical[.]" C.H. immediately approached the patrol car, identified Watkins as her assailant, and began "having choice words about . . . kicking her in the face over 25 cents." She did not want Skero to take Watkins to jail. Skero testified this is common in domestic violence situations because the victim is afraid of retaliation. Skero arrested Watkins and transported him to the Montgomery County Jail. Skero did not observe any injuries to Watkins, Watkins did not complain of any injuries, and the Medical Department at the jail did not require Watkins to receive any treatment.

Skero testified C.H. referred to Watkins as her husband. Skero had seen C.H. once or twice prior to the assault and knew she was homeless. Skero explained that it was his understanding that Watkins and C.H. were common-law married and that they had been together for at least two years. Skero believed that the couple lived together in the car located outside the residence where the assault occurred.

EVIDENCE OF PRIOR ASSAULTS

C.H. testified to two prior assaults by Watkins. She stated that Watkins assaulted her in May 2006. They were living together in a trailer in Willis. She testified she said something to him and he became angry. He slapped her and hit her with a broom handle hard enough to break the handle. She went to the Kroger store and called 9–1–1. Officer Craig Geffert responded to the call and located Watkins within walking distance of the store. Watkins was arrested and taken to jail. Based on Watkins's relationship with C.H., the charge against Watkins for the 2006 incident included a family violence allegation.

C.H. testified that Watkins also assaulted her in March 2008. They were arguing and she found a bat to defend herself. Watkins hit her in the head at least once and took the bat away from her. C.H. went to a neighbor's home because of her blurred vision. The neighbor called 9–1–1.

Officer Julian Trevathan responded to the call. C.H. was screaming and crying hysterically. C.H. told Trevathan that she had been punched in the head and

that she had lost her vision. Trevathan felt several large lumps on C.H.'s head and EMS transported C.H. to the hospital where she was admitted.

Trevathan found Watkins laying face down on a mattress in the house. Trevathan thought Watkins was pretending to sleep. A baseball bat was located in the corner of the room. The bat had a sticky substance on the hand grip and Trevathan noticed the same substance on Watkins when Trevathan handcuffed him. Trevathan did not notice the substance on C.H.'s hands. Watkins did not complain of any injuries or appear injured. C.H. told Trevathan that she loved Watkins and did not want him to go to jail. Watkins was arrested for assault on a family member.

Mark Wright, a crime scene investigator and latent print examiner for the Montgomery County Sheriff's Office Crime Laboratory, matched Watkins's fingerprints with those on records of his prior conviction for the March 2008 assault family violence charge to which Watkins had pleaded guilty.[]

*Watkins v. State*, No. 09-10-00073-CR, 2011 WL 3925583 (Tex. App. — Beaumont Aug. 24, 2011) (unpublished) (footnote omitted).  The Texas Court of Criminal Appeals refused Watkins's petition for discretionary review, making his conviction for assault on a family member final.

Watkins filed a state-court application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure.[6]  He asserts the following grounds:

(1)    there was no evidence to support the conviction;

(2)    his sentence was void and illegal;

(3)    the trial court abused its discretion by failing to: (a) rule on his motion for substitution of defense counsel; (b) give a curative instruction to the jury; (c) grant his motion for a directed verdict; and (d) grant a new trial based on misconduct by the State;

(4)    he was denied effective assistance because his attorney failed to: (a) adequately prepare for trial; (b) investigate all available evidence; and (c) subpoena a witness "for exculpatory evidence"; and

---

[6] Application for a Writ of Habeas Corpus Seeking Relief from Final Felony Conviction Under code of Criminal Procedure, Article 11.07, Docket Entry No. 10-23, at p. 7.

(5)     the  prosecutor engaged in improper conduct, in violating due process.[7]

After considering an affidavit from Watkins's defense counsel,[8] the state trial court entered

findings of fact and concluded that, as a matter of law, Watkins was not entitled to relief.[9] The Texas

Court of Criminal Appeals agreed and denied relief without a written order.[10]

Watkins's federal habeas petition under 28 U.S.C. § 2254 raises the same claims that  the

state court rejected.[11]  The respondent moved for summary judgment, arguing that Watkins is not

entitled to relief.

## II.    The Applicable Law

The Federal Rules of Civil Procedure, including Rule 56 on summary judgment, apply in

habeas corpus proceedings "to the extent that they are not inconsistent with any statutory provisions"

or the Rules Governing Section 2254 Cases in the United States District Courts. *See* Rule 12, Rules

Governing Section 2254 Cases; *see also Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000).

Watkins's federal petition and the respondent's motion are reviewed under the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d), and the consistent

Federal Rules.

---

[7] *Id.* at pp. 12-16.

[8] Defense Counsel's Affidavit, Docket Entry No. 10-24, at pp. 14-16.

[9] Findings of Fact and Conclusions of Law, Docket Entry No. 10-24, at pp. 36-39.

[10] Action Taken on Application for 11.07 Writ of Habeas Corpus, Docket Entry No. 10-21, at p. 1.

[11] Because Watkins is *pro se*, his pleadings are entitled to a liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" ) (internal citation and quotation omitted)).

Under AEDPA, a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). "A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (citations omitted); *see also Williams v. Taylor*, 529 U.S. 362, 404-08 (2000). The standard of an "unreasonable application of clearly established federal law" requires a state court holding that is "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, — U.S. —, 134 S. Ct. 1697, 1702 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

The AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings, . . . [which] 'demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). This standard is intentionally "difficult to meet" because it was intended to bar the relitigation of claims already rejected in state proceedings and to limit federal habeas review to "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03

(quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)); *see also White*, 134 S. Ct. at 1702.

A state court's factual determinations are entitled to deference on federal habeas review. Findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends not only to the state court's express factual findings but also to implicit findings. *See Garcia v. Quarterman*, 454 F.3d 441, 444-45 (5th Cir. 2006) (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)). When a claim presents a fact question, the petitioner cannot obtain federal habeas relief unless he shows that the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A federal habeas court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.' " *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference." *Id.*

Watkins's claims and the record are analyzed under these legal standards.

## III.    Analysis

### A.    The Claim that the Evidence was Insufficient

Watkins contends that the prosecution failed to prove that he and the victim were in a common-law marriage.[12]  Watkins raised this argument on direct appeal, without success.

---

[12] Memorandum of Law, Docket Entry No. 3, at pp. 7-12.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *United States v. Davis*, 735 F.3d 194, 198 (5th Cir. 2013) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). A federal habeas court reviewing a state-court conviction analyzes a challenge to the legal sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002). The federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. ". . . *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, — U.S. —, 132 S. Ct. 2060, 2062 (2012) (per curiam). A federal habeas court questions only whether the state court's assessment of the *Jackson* standard was unreasonable. *See* 28 U.S.C. § 2254(d)(1). Together, *Jackson* and the AEDPA create a "double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011).

The state court of appeals applied the *Jackson* standard to Watkins's claim and concluded that there was sufficient evidence to support his conviction for assault on a family member. The state court explained:

> The State sought to show that Watkins intentionally, knowingly, or recklessly caused bodily injury to another family member and that Watkins had previously been convicted of assault against a member of his family. TEX. PENAL CODE ANN. § 22.01(a)(1); Act of May 27, 2005, 79th Leg., R.S., ch. 788, § 1, 2005 Tex. Gen. Laws 2709 (amended 2009). "Family" includes "individuals related by . . . affinity[.]"[13] *See* Tex. Fam. Code Ann. § 71.003. Two persons are related by

---

[13] The Penal Code provision in effect at the time did not define "family" but instead referred to the definition found in 71.003 of the Family Code. Act of May 26, 1999, 76th Leg. R.S. ch. 1158, § 1, sec.
(continued...)

affinity if they are married to each other. *Id.*, *see* TEX. GOV'T CODE ANN.
§ 573.024(a)(1) (West 2004).

    Watkins concedes that the jury charge was correct and that all elements of the
indictment, except that C.H. was a member of Watkins's family as described in
Section 71.003 of the Texas Family Code, were proven beyond a reasonable doubt.
Watkins maintains that the State prosecuted him for felony family violence upon a
theory that he and C.H. were husband and wife under Texas common law, but the
State failed to prove a common-law marriage between Watkins and C.H.[14] Watkins
does not argue that a common-law husband and wife are not related by affinity.

    The State was required to prove that Watkins intentionally, knowingly, or
recklessly caused C.H., a family member, bodily injury. *See* TEX. PENAL CODE ANN.
§ 22.01(b)(2). C.H.'s testimony and statements to the police officers established that
Watkins was responsible for the harm, that Watkins was C.H.'s common-law
husband, and that they held themselves out as common-law spouses. *See Hudson v.
State*, 179 S.W.3d 731, 741-42 (Tex. App. — Houston [14th Dist.] 2005, no pet.) (In
a trial for assault on a family member, the evidence was sufficient to show that the
complainant was a member of defendant's family, even though a doctor believed that
the complainant referred to defendant as her boyfriend, because the complainant's
statements to the police established that defendant was her common-law husband.).
Skero testified that C.H. and Watkins were common-law married and had been
together for at least two years. The jury heard testimony that Watkins had been
charged two other times with assault on a family member for assaults on C.H., one
of which resulted in a conviction. The evidence is sufficient to support the jury's
verdict. Issues three and four are overruled. The judgment is affirmed.

*Watkins v. State*, 2011 WL 395583, *5-6 (Tex. App. — Beaumont Aug. 24, 2011, pet. ref'd)

(unpublished) (footnotes [renumbered] in original).

    Watkins argues that the evidence did not conclusively establish that he and the victim were

married. The state court of appeals found that sufficient evidence, including testimony, proved that

Watkins and the victim were husband and wife under common law. The victim testified that they

---

¹³(...continued)
22.01(e), 1999 Tex. Gen. Laws 4063 (amended 2005); *see also* Tex. Fam. Code Ann. § 71.003 (West 2008).

    ¹⁴ A valid common-law marriage has three elements under Texas law: (1) the couple agreed to be
married; (2) after the agreement they lived together as husband and wife; and (3) they represented to others
in Texas that they were married. TEX. FAM. CODE ANN. § 2.401(a)(2) (West 2006).

were in a common-law marriage.  A motion Watkins filed referred to the victim as his "common law wife."[15]

A state appellate court's review of the sufficiency of the evidence is entitled to "great weight." *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985) (citing *Jackson*, 443 U.S. at 310, n.15); *see also Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993).  To the extent that Watkins asks this court to reweigh the evidence and decide if the jury's decision was correct, he asks for relief "beyond the scope of review" permitted under *Jackson v. Virginia. See Schlup v. Delo*, 513 U.S. 298, 330 (1995).  A federal habeas court may not substitute its view of the evidence for that of the fact-finder.  *See Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995) (citation omitted).  Under *Jackson*, "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (citation omitted).

Viewing all of the evidence under the doubly deferential standard that applies on federal habeas review, Watkins fails to show that the state court's decision was objectively unreasonable or that he is entitled to relief on this claim.

## B.     The Claim that the Sentence was Void and Illegal

Watkins contends that his sentence was "void and illegal" because "the indictment accused [him] [of] having a common law wife" and was therefore "unduly suggestive and violated [his] rights to due course and due process of law."[16]  Watkins clarifies this contention somewhat in his supporting memorandum.  He argues that because the victim was not his common-law wife, he was

---

[15] [Defendant's] Motion to Dismiss, Docket Entry No. 10-11, at p. 20; Reporter's Record, vol. 6, at pp. 7, 25-26.

[16] Petition, Docket Entry No. 1, at p. 6.

improperly charged, convicted, and sentenced for felony assault on a family member.[17] He contends that he should have been charged with misdemeanor assault at worst.[18] The state habeas court rejected this claim, observing that there was "some evidence that the victim was the applicant's wife[.]"[19] The record supports this result.

To the extent this claim repeats the claim that the evidence was insufficient to support his conviction for assault on a family member, it fails under *Jackson*. Watkins does not identify any other basis for claiming that the indictment violated his due process rights.[20] The state court's denial of relief was not objectively unreasonable. Watkins is not entitled to relief on this claim.

## C.     The Claim of Trial Court Errors

Watkins contends that the trial court abused her discretion by failing to: (a) rule on his motion for substitution of new defense counsel; (b) give a curative instruction to the jury; (c) grant his motion for a directed verdict; and (d) grant a new trial based on misconduct by the State. The state habeas court rejected each claim.

---

[17] Memorandum of Law, Docket Entry No. 3, at pp. 13-15.

[18] *Id.* at p. 14.

[19] Findings of Fact and Conclusions of Law, Docket Entry No. 10-24, at p. 37.

[20] Construing Watkins's claim as a challenge to the sufficiency of the indictment, the respondent argues that he fails to articulate a cognizable claim for review. The Fifth Circuit has emphasized that "the sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Evans v. Cain*, 577 F.3d 620, 624 (5th Cir. 2009) (citing *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. Unit A 1980); *see also McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994) (same)). Watkins does not allege facts showing that the indictment was fundamentally defective or that the trial court lacked jurisdiction over him as a result.

### 1.   The Claim of Failure to Substitute New Counsel

Approximately four months before trial, Watkins filed a "Motion to Dismiss Court Appointed Attorney and Appoint New Counsel to Act on Behalf of Defendant."[21] The trial court did not rule on the motion.  Watkins proceeded to trial with his appointed counsel, Steve Simonsen.[22] Watkins appears to argue that the trial court's failure to rule on his motion for a new trial denied him effective assistance of counsel.[23]

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend VI.  The "Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989)).  While "[t]he  Sixth Amendment guarantees the right to counsel, . . . indigent defendants have no right to appointed counsel of their choice." *United States v. Conlan*, 786 F.3d 380, 391 (5th Cir. 2015) (citation and internal quotation omitted).  A "court is constitutionally required to provide substitute counsel only if there is a substantial conflict or problem affecting the ability to represent the defendant—'a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which led to an apparently unjust verdict.'" *Id.*

---

[21] Docket Entry No. 10-11, at pp. 21-22.

[22] Docket Sheet, Docket Entry No. 10-11, at pp. 6, 22.

[23] Memorandum of Law, Docket Entry No. 3, at pp. 15-16.

Watkins has not alleged facts showing an actual conflict with his court-appointed counsel or a breakdown in communications between them.  As explained below, Watkins's allegations supporting his ineffective assistance claims lack merit.  The record does not show that the trial court erred in not appointing new counsel or that the state court's decision to deny relief on the claim was objectively unreasonable.

### 2.     The Failure to Give a Curative Instruction

Watkins contends that the trial court erred by failing to give the jury a curative instruction after he interrupted the victim's testimony, the prosecutor objected, and the court responded. The exchange is set out below:

> [PROSECUTOR] MS. CZAJKOSKI: Objection.  I'm going to object to the defendant testifying.  If he wants to take the stand, I don't have a problem with that; but him speaking out in court is not appropriate.
>
> THE COURT:  Okay.  Be careful, Mr. Simonsen, that we can't hear - -
>
> [DEFENSE COUNSEL] MR. SIMONSEN:  Is there a way that we can [turn the microphone off]?
>
> THE COURT:  I'll turn that off for you.
>
> MR. SIMONSEN:  Okay.
>
> THE COURT:  He's not going to be able to make facial expressions or shake his head or do anything like that during her testimony.[24]

Watkins contends that the prosecutor's objection was an improper comment on his failure to testify, requiring a curative instruction.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. The Supreme Court has held that "the

---

[24] Reporter's Record, vol. 4, Docket Entry No. 10-15, at pp. 164-65 (emphasis added).

Fifth Amendment, . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965). Watkins does not show that the prosecutor's objection violated *Griffin*. The prosecutor's isolated remark, read in context, did not comment on the defendant's failure to testify. Instead, the remark was "intended to call attention to [the defendant's] disruptive behavior. *United States v. Griffith*, 118 F.3d 318, 325 (5th Cir. 1997). The trial court did not err by failing to give a curative instruction, not only because Watkins did not ask for one, but also because there was nothing to cure. If there was error, it had no "substantial and injurious effect or influence" on the jury's verdict. *See Fry v. Pliler*, 551 U.S. 112, 121 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)).

Watkins does not show that the state court's adjudication of this claim was objectively unreasonable. He is not entitled to relief on this claim.

### 3. The Failure to Grant a Motion for Directed Verdict

Watkins contends that the trial court erred by denying his motion for a directed verdict because the prosecution did not prove its case beyond a reasonable doubt.[25] A petitioner's claim that the trial court erred in denying a motion for a directed verdict "merely state[s] in different words his claim[] that the evidence is insufficient to support the conviction[]." *Gartrell v. Lynaugh*, 833 F.2d 527, 528 (5th Cir. 1987). The state court rejected Watkins's claim and he has not shown that this decision was unreasonable. Watkins cannot show that he is entitled to relief on the claim that the trial court should have granted a directed verdict.

---

[25] Reporter's Record, vol. 6, Docket Entry No. 10-17, at p. 16.

### 4.     The Failure to Grant a Motion for New Trial

Watkins filed a postjudgment motion for new trial based on a statement reportedly made by the victim, who was compelled to attend trial under a writ of attachment.[26] In support of that motion, Watkins's defense counsel recounted a statement the victim made to him after the trial:

> Chandra Harvey stated to me in a telephone conversation after the trial that she was instructed by the officers that came to her home and arrested her pursuant to the writ of attachment that if she did not testify exactly as her complaint, then she would be sent to prison. Then, they gave her the police reports in the case to review and told her to memorize them.[27]

The motion was overruled by operation of law, without a hearing or a written order from the trial court. *See* TEX. R. APP. P. 21.8(c). Watkins contends that the trial court erred by failing to grant a new trial based on his newly discovered evidence of "witness tampering" by the prosecution.[28]

The respondent argues that the trial court properly denied the motion for new trial because defense counsel's affidavit was based on hearsay and was an insufficient basis for a new trial under Texas law. The record and caselaw support his argument. *See Lawson v. State*, 206 S.W.2d 608, 609 (Tex. Crim. App. 1947) (newly discovered evidence that could not have been used because it was hearsay was not sufficient to warrant a new trial); *Poe v. State*, 630 S.W.2d 885, 888 (Tex. App. — Fort Worth 1982, pet. ref'd) ( the trial court did not err in refusing a motion for new trial based on newly discovered evidence that was "obviously hearsay"); *Blackmon v. State*, 926 S.W.2d 399, 403 (Tex. App. — Waco 1996, pet. ref'd) (the trial court did not abuse its discretion in denying a motion for new trial based on newly discovered evidence that was impeaching hearsay evidence).

---

[26] Clerk's Record, Docket Entry No. 10-11, at pp. 91-92.

[27] *Id.* at p. 94.

[28] Memorandum of Law, Docket Entry No. 3, at p. 18.

Because the motion for new trial was based on inadmissible hearsay, Watkins cannot show that the trial court erred by failing to grant the motion.

In addition, Watkins has not presented an affidavit from the victim and the record contains no other evidence that would support his witness-tampering claim. The victim's trial testimony undercuts Watkins's argument. The victim explained on direct examination that she was reluctant to come to court because she loved Watkins and "didn't want to go against him in this."[29] The victim was not a cooperative witness for the prosecution. The prosecutor had to impeach her testimony with the written statement she had given to the police.[30] The victim denied discussing her testimony with anyone before the trial.[31] When asked if she had been coerced or promised anything for her testimony, the victim replied, "No. I was just picked up and brought here."[32] She made no mention of any threats or coercion by law enforcement or the prosecution. In short, she denied any coercion to testify in a particular way.

A federal habeas court cannot accept a petitioner's "bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, . . . [as] of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (citing *Woodard v. Beto*, 447 F.2d 103 (5th Cir. 1971)). The Fifth Circuit has repeatedly emphasized that "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Ross*, 694 F.2d at 1012 (citing *Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir. 1982)

---

[29] Reporter's Record, vol. 4, Docket Entry No. 10-15, at p. 96.

[30] *Id.* at pp. 108-27.

[31] *Id.* at p. 137.

[32] *Id.*

(collecting cases)). The record fails to show that the state court's decision rejecting this claim was objectively unreasonable. Watkins is not entitled to relief on his claim that the trial court erred by failing to grant his motion for new trial.

### D.    The Claim of Ineffective Assistance of Counsel

Watkins contends that he was denied effective assistance of counsel because his attorney failed to: (a) adequately prepare for trial; (b) investigate "all available evidence"; and (c) subpoena witnesses "for exculpatory evidence." The state habeas corpus court rejected these claims under *Strickland v. Washington*, 466 U.S. 668 (1984).[33]

To prevail under *Strickland*, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687. "To satisfy the deficient performance prong, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" *Hoffman v. Cain*, 752 F.3d 430, 440 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 688), *cert. denied*, 135 S. Ct. 1160 (2015). This is a "highly deferential" inquiry; "[t]here is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689) (internal quotation marks omitted). "To satisfy the prejudice prong, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

---

[33] Findings of Fact and Conclusions of Law, Docket Entry No. 10-24, at p. 81.

The central question for this court is not whether "' the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable—a substantially higher standard.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* When applied with the highly deferential standard under 28 U.S.C. § 2254(d), federal habeas review of ineffective-assistance claims is "doubly deferential." *Knowles*, 556 U.S. at 123; *see also Richter*, 562 U.S. at 105 (the standards under *Strickland* and § 2254(d) are both "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted); *Beatty v Stephens*, 759 F.3d 455, 463 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 2312 (2015) (same).

## 1.   The Claim that Counsel Failed to Investigate or Adequately Prepare for Trial

Watkins alleges that his defense counsel, Steve Simonsen, did not communicate sufficiently with him before trial and was unprepared to present a defense.[34] In particular, Watkins alleges that Simonsen was under the impression that the victim would not come to court to testify, failed to investigate her criminal record and her "medical condition for violence," and could not adequately cross-examine her.[35]

In response to Watkins's allegation, Simonsen filed an affidavit stating that he "adequately prepared for trial" and detailing his investigation of the case.[36] In rejecting Watkins's ineffective-

---

[34] Memorandum of Law, Docket Entry No. 3, at p. 20.

[35] *Id.* at p. 21.

[36] Defense Counsel's Affidavit, Docket Entry No. 10-24, at p. 14.

assistance claim, the state habeas court stated that it was "familiar with the effective performance of the applicant's attorney at the time of his trial, Mr. Steve Simonsen, who has long practiced in the courts of Montgomery County and is well-qualified for appointment as trial counsel in serious felony cases."[37]  The court found that "Simonsen conducted a thorough investigation, as detailed in his credible affidavit, and his representation of the applicant was not deficient in any respect."[38]

Watkins makes no effort to rebut the state court's credibility determinations or its factual findings, which the record supports.  The record reflects that Simonsen capably cross-examined the victim about her propensity to binge drink, its effect on her mood, and her tendency to black out.[39]  Simonsen was clearly aware of the victim's criminal record because he questioned her about a "criminal trespass warning" filed by Watkins's mother.[40]  He also questioned the victim at length about her record of fighting with other people, including with a roommate. He questioned the victim about criminal charges against her for assaulting a public servant.[41]  He questioned the victim about whether she was drinking on the day of the offense and whether she—not Watkins—was the aggressor.[42]  During his closing, Simonsen argued that the victim was not believable, that she was

---

[37] Findings of Fact and Conclusions of Law, Docket Entry No. 10-24, at p. 37.

[38] *Id.*

[39] Reporter's Record, vol. 4, Docket Entry No. 10-15, at pp. 128-30.

[40] *Id.* at p. 130.

[41] *Id.* at pp. 170-73.

[42] *Id.* at pp. 132-36.

drunk and belligerent when the fight with Watkins took place, and that the prosecutor failed to prove its case beyond a reasonable doubt.[43]

A habeas petitioner who alleges a failure to investigate on the part of his counsel must state with specificity what the investigation would have revealed and how it would have changed the outcome of his trial. *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). Watkins's conclusory allegations are insufficient to show deficient performance or actual prejudice. *See Day v. Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009); *see also Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief because the petitioner "offered nothing more than the conclusory allegations in his pleadings" to support his claim that counsel was ineffective for failing to investigate and present evidence). Watkins does not show any deficiencies in his attorney's investigation or trial preparations that caused prejudice. The record shows that the state court's effective-assistance finding was reasonable, and Watkins is not entitled to relief on this claim.

## 2. The Claim that Counsel Failed to Call Witnesses

Watkins contends that Simonsen was deficient for failing to call several witnesses, most of whom he identifies by first name only, who could have testified that the victim had another common-law husband[44] and could not have been Watkins's common-law wife.

---

[43] Reporter's Record, vol. 6, Docket Entry No. 10-17, at pp. 53-59.

[44] Memorandum of Law, Docket Entry No. 3, at p. 22. Watkins's claim concerning uncalled witnesses consists of the following:

> . . . There was witnesses for the defense. Lucy Bracken could have attested to C. Harvey had [*sic*] Applicant on the ground and told her she did not have anything to do with it. Anna could have testified to C. Harvey having a common-law husband and visiting them at their home. Debbie her friend could testify to comming [*sic*] from Oklahoma and visiting C.
>
> (continued...)

In his affidavit to the state habeas court, Simonsen stated that when he asked Watkins for a list of potential witnesses, he identified his mother.[45] Simonsen "interviewed her and discovered that she would have nothing really good to say about her son."[46] Simonsen talked briefly with some of Watkins's other relatives, but they provided nothing useful.[47] According to Simonsen, Watkins did not tell him about any other witnesses.[48] The state habeas court found that Watkins "did not inform Simonsen of the potential witnesses he claims Simonsen failed to interview, and no reasonable investigation would have discovered their identities,"[49] and that Watkins's "uncorroborated assertions about what the vaguely-identified witnesses would have testified to are not credible."[50]

Watkins presents no affidavit or other sworn account from any of the witnesses he claims his counsel should have called. "Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses's willingness to testify and the substance of the proposed testimony." *Gregory v. Thaler*, 601 F.3d 347, 353 (5th Cir. 2010) (citing *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007)); *see also Sayre v. Anderson*, 238 F.3d 631, 635-36

---

[44](...continued)
Harvey and her common-law husband for a week.  John and Curtis can testify to her common law husband coming to John house [*sic*].  Lesa can testify to C. Harvey is [*sic*] her friend and she knew about her common law husband and also Applicant [*sic*].

Id. at 22.

[45] Defense Counsel's Affidavit, Docket Entry No. 10-24, at p. 15.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] Findings of Fact and Conclusions of Law, Docket Entry No. 10-24, at p. 37.

[50] *Id.*

(5th Cir. 2001) ("[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative) (citations omitted). To demonstrate the required *Strickland* prejudice in this context, a petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). Absent affidavits (or similar evidence) from any of the uncalled witnesses, Watkins's claim is speculative and conclusory. *See Sayre*, 238 F.3d at 636. He does not demonstrate that his attorney was deficient for failing to call witnesses or that he was prejudiced as a result. The state court's decision to deny relief on this claim was not objectively unreasonable, and Watkins is not entitled to relief.

### E.   The Claim of Prosecutorial Misconduct

Watkins alleges that the prosecutor engaged in improper conduct and violated his due process rights. Watkins alleges that: (1) one of the prosecutors engaged in "name calling" by saying that he thought Watkins was "crazy" for not taking a plea bargain for two years in prison;[51] (2) the prosecution improperly secured the victim's presence at trial through a subpoena or writ of attachment;[52] and (3) one of the prosecutors threatened the victim by telling her that she could be held in contempt of court if she refused to testify.[53] These claims were summarily rejected on state habeas review. Each is examined below.

---

[51] Petition, Docket Entry No. 1, at p. 8; Memorandum of Law, Docket Entry No. 3, at p. 24.

[52] Memorandum of Law, Docket Entry No. 3, at pp. 25-27.

[53] *Id.* at p. 27.

### 1.    The Claim of Improper Prosecutorial Comments

A prosecutor's comments, even if improper, do not violate the Constitution unless they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  Watkins alleges that the prosecution made the comment about  the plea before trial began.[54]  Watkins does not allege that the prosecution commented about any proposed plea bargain in front of the jury. The record contains no indication of this comment in front of the jury. Watkins cannot show that the alleged comment made his trial "fundamentally unfair." *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

### 2.    Compulsory Attendance of Witnesses at Trial

Watkins contends that it was improper for the prosecution to compel the victim to testify. Texas law gives both the prosecution and the defendant right to subpoena witnesses for trial. *See* TEX. CODE CRIM. PROC. art. 24.03(a); *see also Erwin v. State*, 729 S.W.2d 709, 713 (Tex. Crim. App. 1987) (a subpoena filed by the prosecution inures to the benefit of the defendant).  Either side may obtain a writ of attachment to secure witness's testimony. TEX. CODE CRIM. PROC. art. 24.14; *Brown v. State*, 907 S.W.2d 835, 842 (Tex. Crim. App. 1995).  The victim in this case was quite candid about the fact that she did not wish to testify,[55] which made it necessary for the prosecution to use a writ of attachment to secure her presence at trial.  Watkins does not allege facts showing that the prosecution did anything inappropriate in issuing the writ of attachment.

---

[54] *Id*. at pp. 24-25.

[55] Reporter's Record, vol. 4, at pp. 94, 95-96.

### 3.     The Claim that the Prosecution Threatened the Victim

Watkins alleges that one of the prosecutors threatened the victim with contempt of court if she failed to give testimony unfavorable to Watkins. The prosecution allegedly made this threat in front of the victim's sister.[56]  Watkins does not allege or show that the prosecution threatened or coerced the victim into testifying falsely.  *See, e.g., Giglio v. United States*, 405 U.S. 150, 153 (1972).  Watkins does not provide an affidavit or sworn statement from either the victim or her sister to substantiate his claim.  At trial, the victim denied discussing her testimony with anyone before trial and made no mention of any prosecution threats.[57]  Watkins's unsupported allegations of prosecutorial misconduct are insufficient to merit federal habeas relief.  *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990) (bare allegations of prosecutorial misconduct do not show a  due process violation).  Watkins is not entitled to relief on this claim.

## IV.     Conclusion and Certificate of Appealability

Watkins has failed to show that he is entitled to relief under 28 U.S.C. § 2254(d) on any of his claims.  The respondent's motion for summary judgment, (Docket Entry No. 13), is granted, the petition, (Docket Entry No. 1), is denied; and this case is dismissed by separate order.

Under Rule 11 of the Rules Governing Section 2254 Cases, a district court must issue or deny a certificate of appealability when entering a final order adverse to the petitioner.  To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the

---

[56] Memorandum of Law, Docket Entry No. 3, at p. 27.

[57] Reporter's Record, vol. 4, Docket Entry No. 10-15, at p. 137.

district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Ward v. Stephens*, 777 F.3d 250, 255 (5th Cir. 2015) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). A district court may deny a certificate of appealability on its own, without requiring further briefing or argument. *Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). The court finds that Watkins has not made a substantial showing of the denial of a constitutional right, and no certificate of appealability will issue.

SIGNED on August 31, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge